| | |
|---|---|
| **DEBORAH LIPPMAN, TRUSTEE,** | ) |
| **BLACKSTONE MILL DEPOT STREET REALTY TRUST,** | ) |
| **ROBERTA HEAVEY, BUILDING MANAGER** | ) |
| **AND BENEFICIARY, and** | ) |
| **BLACKSTONE MILL DEPOT STREET REALTY TRUST** | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION** |
| | ) **NO. 18-40185-TSH** |
| | ) |
| | ) |
| **TOWN OF GRAFTON BY AND THROUGH ITS** | ) |
| **INSPECTOR OF BUILDINGS ROBERT S. BERGER and its** | ) |
| **ASSISTANT FIRE CHIEF STEPHEN L. CHAREST,** | ) |
| **Defendants.** | ) |

**MEMORANDUM OF DECISION AND ORDER**
**March 22, 2022**

**HILLMAN, D. J.**

**Background**

Plaintiffs have filed a First Amended Complaint against the Defendants alleging claims

under the federal civil rights act, 42 U.S.C. §1983 ("section 1983") for alleged violation of their

Fourteenth Amendment rights to equal protection and their substantive due process rights.

Additionally, they have alleged a claim for civil conspiracy under 42 U.S.C. § 1985 ("section

1985") against the individual Defendants. More specifically, Plaintiffs allege that the

Defendants unjustified and discriminatory enforcement of International and Massachusetts

Building Codes and Mass. Gen. L. ch. 143 §§6-12 with regard to the Blackstone Hill Depot

Realty Trust ("Blackstone") caused them to suffer substantial financial losses.

This Memorandum of Decision Order addresses: Defendants Town of Grafton by and

through its Inspector of Buildings Robert S. Berger's and its Assistant Fire Chief Stephen L.

Charest's Motion for Summary Judgment (Docket No. 58);  Defendant Commissioner Robert S.

Berger's and (Ret.) Assistant Fire Chief Stephen L. Charest's Motion to Strike The Affidavit of

James Shuris, P.E. (Docket No. 63); and Plaintiff's Motion to Amend Affidavit of Their Expert

Witness James Shuris (Docket No. 64).  For the reasons set forth below, the Defendants'  motion

for summary judgment and motion to strike affidavit are granted. Plaintiffs' motion to amend is

denied as moot.

## The Motion To Strike

In support of their opposition to the motion for summary judgment, the Plaintiffs have

relied, in part, on the *Affidavit of James Shuris, P.E., MBA In Support of Plaintiffs'*

*Memorandum in Opposition To Defendant Town of Grafton By and Through Its Inspector of*

*Buildings Robert S. Berger's And Assistant Fire Chief Stephen L Charest's Motion for Summary*

*Judgement*, attached as *Ex. 4* to Plaintiffs' Memorandum in Opposition (Docket No.  61)("Shuris

Affidavit").  Defendants have moved to strike the Shuris Affidavit on the grounds that (i) the

Plaintiffs did not designate James Shuris, P.E, MBA ("Shuris") as an expert in this case prior to

submitting his affidavit as part of their opposition to their motion for summary judgment; (ii) the

Shuris Affidavit is not based on personal knowledge; and (iii) the Shuris Affidavit is irrelevant to

the events in this case. Plaintiffs' have filed a motion to amend the Shuris Affidavit to assert that

the facts and opinions that Shuris includes therein are based on personal knowledge. Plaintiffs

then argue that the Shuris Affidavit should be considered by the Court because it is relevant to

their claims and, under the circumstances of this case (as more fully described below), their failure to properly and timely designate Shuris as an expert should be excused.

The original Scheduling Order (Docket No. 27) in this case provided that Plaintiffs' experts must be designated and their disclosures made by November 10, 2020, and the Defendants by December 10, 2020. On November 9, 2020, the Defendants filed an assented to motion to amend the Scheduling Order, including the deadline for designating experts and making expert disclosures to January 10, 2021 for Plaintiffs and February 10, 2021 for Defendants. That motion was granted (the Court also extended the time by which each parties' experts be deposed). *See* Docket Entry No. 31. On December 18, 2020, the Plaintiffs filed an assented to motion to further amend the Scheduling Order, including extending the date by which experts be designated and expert disclosures made to February 10, 2021 for the Plaintiffs and March 10, 2021 for the Defendants (the time for deposing experts would also be extended). That motion was granted. On January 25, 2021, Plaintiffs filed a motion to amend the Scheduling Order to extend, among other deadlines, the date for designating experts and making expert disclosures to March 15, 2021 for Plaintiffs, and May 10, 2021 for Defendants. Additionally, they requested that the date for the filing of dispositive motions be extended to June 10, 2021. That motion was opposed. On March 2, 2021, the Court granted the motion to amend the Scheduling Order, in part. The Court granted the motion to the extent that Plaintiffs sought to complete the depositions of Messrs. Berger and Charest and denied it in all other respects. Accordingly, Plaintiffs were required to designate experts and make expert disclosures by March 15, 2021.

A status conference was held in this case on May 12, 2001— almost two months after the time by which Plaintiffs were required to designate their experts and provide the Defendants with

the requisite expert disclosures. At the status conference, Plaintiffs' counsel stated that they intended to designate an expert. Defendants responded that they had never been notified of any experts or received expert disclosures. They further indicated that they were prepared to file a dispositive motion. The Court then ordered that dispositive motions be filed by June 11, 2021 and responses by July 2, 2021. At that time, counsel for the Plaintiffs indicated that due to perceived voids in what he was provided during discovery, he intended to hire a professional engineer and would provide Defendants with his name and address so that they would have the opportunity to depose him. Counsel was advised by the Court that the time for designating experts had passed and that unless Defendants' counsel assented to the late designation/disclosure, he would need to file a motion with the Court to extend expert deadlines. Counsel indicated that he would file such a motion, however, no motion was filed. Moreover, Plaintiffs identified the new expert, Shuris, for the first time in their opposition to the Defendants' motion for summary judgment and included the Shuris Affidavit which contains expert opinions upon which they rely in opposing Defendants' motion. Defendants have moved to strike the Shuris Affidavit on the grounds that Plaintiffs' designation of Shuris is untimely and consideration of the affidavit would be prejudicial to them.

In response to Defendants' motion to strike, Plaintiffs cite to cases which stand for the proposition that a party should not be drastically penalized for failing to meet a discovery deadline where there has not been a history of late disclosures during the case. However, this is not simply a case of late disclosure. The Court previously denied Plaintiffs' motion to extend the time for designating experts and making expert disclosures. Nonetheless, Plaintiffs persisted in engaging an expert after the designated deadline had passed. When Plaintiffs' counsel informed Defendants and the Court at a status conference that they intended to rely on said expert going

forward, he was informed that because the deadline had passed, he would need to obtain the

assent of Defendants or seek leave of Court. Plaintiffs' counsel represented he would do so and

further, that Plaintiffs would provide the Defendants with the name of said expert and his expert

disclosures to that they could depose him. Plaintiffs did neither. Instead, they ambushed the

Defendants by identifying their expert in their opposition to the Defendants' motion for summary

judgment and relied, in part, on his opinion, submitted by way of affidavit, to support said

opposition. First, I find that based on their submissions the Plaintiffs have not established good

cause to amend the Scheduling Order to extend the expert discovery deadlines. Additionally,

given that the Defendants prepared their summary judgment motion assuming that expert

disclosures were complete, they will be prejudiced if Plaintiffs are permitted to rely on an expert

disclosure that is presented for the first time in opposition to their summary judgment motion.

Under the circumstances, the motion to strike the *Shuris Affidavit* is granted. Accordingly, the

Court will not permit the Plaintiffs to rely on any assertions/opinions contained in the Shuris

Affidavit to create a genuine issue of material

fact.[1]

## The Motion for Summary Judgment

### Standard of Review

Summary Judgment is appropriate where, "the pleadings, depositions, answers to

interrogatories and admissions on file, together with affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

---

[1] I want to make clear that striking the *Shuris Affidavit* has no bearing on the outcome of Defendants' motion because even if the Court were to consider the "opinions" contained therein, the Defendants would be entitled to summary judgment. I so find because I agree with the Defendants that such opinions, which primarily relate to whether Defendants properly interpreted Massachusetts building code laws and regulations, are irrelevant to Plaintiffs' section 1983 equal protection and section 1985 civil conspiracy claims. Moreover, even if his conclusion that Defendants incorrectly applied applicable laws and regulations was determined to be relevant to Plaintiffs' substantive due process claim, that claim would still fail for the reasons set forth in my discussion thereof, *infra*.

of law." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 (1st Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "'A "genuine" issue is one that could be resolved in favor of either party, and a "material fact" is one that has the potential of affecting the outcome of the case.'" *Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 152 (1st Cir. 2009) (quoting *Calero-Cerezo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004)).

When considering a motion for summary judgment, the Court construes the record in the light most favorable to the nonmoving party and makes all reasonable inferences in favor thereof. *Sensing,* 575 F.3d at 153. The moving party bears the burden to demonstrate the absence of a genuine issue of material fact within the record. *Id.,* at 152. "'Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the nonmoving party must come forward with facts that show a genuine issue for trial.'" *Id.* (citation to quoted case omitted). "'[T]he nonmoving party "may not rest upon mere allegations or denials of the [movant's] pleading but must set forth specific facts showing that there is a genuine issue of material fact as to each issue upon which [s/he] would bear the ultimate burden of proof at trial." *Id.* (citation to quoted case omitted). The nonmoving party cannot rely on "conclusory allegations" or "improbable inferences". *Id.* (citation to quoted case omitted). "'The test is whether, as to each essential element, there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." ' " *Id.* (citation to quoted case omitted).

## Facts[2]

The Plaintiffs are owners of an old commercial mill building located at 6 Depot Street in Grafton, MA ("6 Depot St.") which they acquired in 1992. The building, which was built in approximately 1840, consists of a four-story structure with an attached single-story structure known as the "weaving room."  Plaintiff, Robert Heavey ("Heavey"), is a Trustee of Blackstone and the building manager of 6 Depot St. Deborah Lippman ("Lippman"), also a Trustee of Blackstone, is Heavey's wife.

After acquiring 6 Depot St., the main four-story building was converted into a storage facility known as U-Store-It ("U-Store") which was owned and operated by Heavey.  In the relevant time frame (2015), High Purity and Heavey Construction were also commercial tenants of 6 Depot St.  Ryan Greenwood ("Greenwood") worked on behalf of Heavey and sat at the desk checking people in to the facility at 6 Depot St. during this time frame.

---

[2] The Defendants have filed a Statement of Material Facts (Docket No. 60) in which they assert those factual allegations which they allege are not in dispute. Pursuant to this Court's Local Rules, Plaintiffs were then required to file a statement of those material facts which they allege are in dispute. *See* LR, D.Mass. 56.1.  While Local Rule 56.1 does not require Plaintiffs to rebut each of Defendants' asserted statements of fact, it does require that their statement in opposition include only those facts which they assert are in dispute. Instead. Plaintiffs' Statement of Material Facts (Docket No. 61-1) sets forth their own version of those facts which they deem material, leaving it to the Court to try to discern which of Defendants' facts they are contesting. After reviewing Plaintiffs' Statement of Material Facts, the Court finds that they have disputed few of the Defendants' factual allegations, and none of those which are material.  Consequently, the Court has largely adopted the factual allegations asserted in Defendants' Statement of Material Facts. *See Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 832 F.3d 1, 4 n. 2 (1st Cir. 2016)(Local Rule 56.1 does not require paragraph-by-paragraph rebuttal; it is sufficient for the party opposing summary judgment to file a statement of facts *it believes are still under dispute*). Additionally, while the Court has accepted many of the factual allegations contained in Plaintiffs' Statement of Material Facts, it must be noted that in support of their factual allegations Plaintiffs cite primarily to the Verified Complaint. While the complaint may be verified, it is replete with legal conclusions and factual assertions which cannot possibly be within the personal knowledge of the affiants (the Plaintiffs), and therefore, cannot create genuine issues of material fact. Finally, in their memorandum in opposition to the motion for summary judgment, Plaintiffs have asserted numerous facts *which were not part of their Statement of Material Facts and which contain no citation to evidence in the record.* The Plaintiffs rely on many of these facts to support their legal arguments. However, the Court has not accepted any of the facts asserted in Plaintiffs' opposition that lack citation to record support and will not consider such facts for purposes of determining whether there are genuine issues of material fact sufficient to withstand Defendants' motion for summary judgment.

At all relevant times, Robert S. Berger ("Commissioner Berger" or "Building Commissioner") was the Building Commissioner for the Town of Grafton ("Grafton"). Before November 2015, Heavey had never met Commissioner Berger or Stephen L. Charest, Grafton's Assistant Fire Chief ("Chief Charest"). Chief Charest was the primary fire inspector for Grafton.

In early 2015, a portion of the weaving room roof of 6 Depot Street collapsed. In November 2015 the Plaintiffs received a notice from the Building Commissioner about an unsafe structure at 6 Depot Street. The letter advised Heavey that he could appeal the Building Commissioner's finding in the notice of an unsafe structure, but Mr. Heavey did not do so.

As a result of the roof collapse and notice from the Building Commissioner, a demolition contractor applied for a demolition permit on behalf of the Plaintiffs. Chief Charest and Commissioner Berger met the demolition contractor at 6 Depot St. for a pre-permit inspection.[3] More specifically, Chief Charest met with the demolition contractor to perform a site inspection to determine how the demolition contractor was going to terminate the sprinkler piping that went into the main four-story building from the weaving room. When they entered the main building at 6 Depot Street, the men were greeted by a manager or attendee of the building who allowed them inside. According to Plaintiffs, the employee was not authorized to allow Commissioner Berger and Chief Charest into the main building "especially when they were there for the purpose of viewing the weaving room." Nonetheless, the gentleman made a phone call and then escorted the demolition contractor, Commissioner Berger and Chief Charest around the building. Once they entered the main building, Commissioner Berger and Chief Charest observed that the building did not have emergency lights or exit lights, every emergency door was dead bolted

---

[3] According to Chief Charest, he would enter a commercial building for purposes of inspecting it only if invited to do so or has received a complaint. Once he enters a building, if he observes a violation, he is required to act on the violation.

from the inside, and not all of the fire escapes went all the way to the ground.[4] They also observed that on the third and fourth floors of the building, erected storage walls/units were constructed in such a way as to hamper the sprinkler heads, fire extinguishers were two to three years out of date, and bricks were dropping from the chimney. Asbestos was also identified inside the building. Neither Commissioner Berger nor Chief Charest had ever been inside of 6 Depot St. before their pre-permit inspection in 2015. After this pre-permit inspection, although Commissioner Berger and Chief Charest returned to 6 Depot Street, it was never at the same time.

Commissioner Berger consulted with State Building Inspectors Jeffrey Putnam and Adele Reynolds for technical advice and guidance on how to deal with the Plaintiffs' property. He also hired a code consultant from Paul Moriarty & Associates to review his decisions. Chief Charest consulted with the State Fire Marshal's office about 6 Depot Street to make sure he was proceeding properly (because of the size of the building and the nature of the violations). He met with the someone from the State Fire Marshal's office outside 6 Depot Street and together, they walked the exterior perimeter of the building. During their walk around the perimeter, they discovered that the sprinkler system had been completely shut off in an adjoining small structure. On January 4, 2016, the Plaintiffs were ordered to turn back on the sprinkler system. The Plaintiffs did not appeal this Order.

Chief Charest determined that 6 Depot St. was unsafe for the public because it had no exit lights or emergency lights and dead bolted exit doors. Moreover, due to Plaintiffs' lack of sprinkler reports, Chief Charest was unable to tell if the sprinkler system was operational-- since the Plaintiffs had no documentation that showed sprinklers to be operational inside the building,

---

[4] According to Chief Charest, the emergency exit doors in the building were extremely important because the main building only had one staircase in the center of the building.

Chief Charest had to presume from what he saw that the system was not operational. At some point, Chief Charest told Heavey that Commissioner Berger would not allow 6 Depot St. to reopen until Blackstone had paid South Grafton Water Co. monies which it allegedly owed for water. Plaintiffs took this as a threat and state that it was based on misinformation.

On November 5, 2015, after viewing 6 Depot St., Commissioner Berger sent Lippman a letter stating that it had come to the town's attention that 6 Depot St. may be an unsafe structure and dangerous to life and limb under applicable provisions of Massachusetts law. This is the first time that Lippman and Heavey had been advised by any Defendant that possible safety issues existed at 6 Depot St. Lippman and Heavey were not notified of the nature of the violations. According to the Plaintiffs, since they did not know the nature of the alleged violations, Heavey cut power to the weaving room and hired individuals to assist with the repairs to the roof. The weaving room was surrounded with wire fencing to assist in protecting passersby. Plaintiffs were never asked to erect any additional security fencing.

On December 17, 2015, Commissioner Berger sent a letter to the Conservation Commissioner, the Grafton Town Administrator, and the Grafton Board of Health that 6 Depot St. may contain asbestos. Blackstone was not copied on this letter. At this time, Blackstone was already in the process of making plans to remove the asbestos and had contacted the Massachusetts Department of Environmental Protection ("DEP") for a removal permit for 6 Depot. According to Plaintiffs, the Worcester office of the DEP determined that the asbestos present at 6 Depot St. was "minor."

In November 2015, Defendants informed Blackstone that to secure requisite permits from Grafton, it had to address several safety issues which went beyond issues relating to the roof collapse at the weaving room, including, upgrading the fire escapes, emergency exit doors,

windows, sprinkler system, and the roof and chimney on the main building. According to Plaintiffs, such items required only basic maintenance and ordinary repairs for which permits are not required under the Massachusetts Building Code ("Code").

On December 30 and 31, 2015, Commissioner Berger posted first and second offense notices closing 6 Depot St. and prohibiting anyone from entering the building or occupying it without prior authorization. On January 5, 2016, Heavey sent Commissioner Berger a letter describing what Blackstone was doing to address the issues raised regarding 6 Depot St., including the purchasing of exit signs and emergency lights, scheduling repairs to the leaky roof, arranging push bars for the exit doors and hiring a structural engineer to review and supervise all needed repairs (this hiring was done at Commissioner Berger's insistence). Commissioner Berger denies having received the letter.

On January 11, 2016, Heavey, who believed the Defendants were not properly applying the Code to 6 Depot St. and believing he was being harassed by Commissioner Berger, filed an application to demolish 6 Depot St. Heavey, who is a licensed construction supervisor, included a certificate of liability insurance with the demolition application. Grafton denied the application without specifying a reason.

On February 5, 2016, Blackstone received a letter from counsel for Grafton notifying it that permits were necessary under the Code for maintenance and ordinary repairs, as defined therein. Plaintiffs do not interpret the Code as requiring notice to Commissioner Berger or permits for ordinary repairs to structures. On February 16, 2016, Commissioner Berger notified Blackstone's attorney of the building permits that would be required and stated that it would be necessary for Blackstone to hire a registered design professional for any alterations, additions,

expansions or change in occupancy of the building. Plaintiffs do not believe that the Code required building permits.

Commissioner Berger determined that the property at 6 Depot Street fell under controlled construction. According to Commissioner Berger and Chief Charest, the violations at 6 Depot St. did not fall under "ordinary repairs" because the violations were items that were completely missing and needed to be installed, not simply repaired, that is, the violations were not repairs of already installed fixtures but instead were fixtures and other items that needed to be installed. For example, the Plaintiffs were required to add new components (emergency lights, exit signs, hardware). When Commissioner Berger gave his opinion to Plaintiffs' then counsel as to why he did not feel the violation at 6 Depot Street fell under "ordinary repairs," he expressly advised counsel that he could take an appeal of that decision to the State Board of Building Regulations and Standards. Although they disagreed with Commissioner Berger's opinion that the code violations at 6 Depot St. fell under construction control, the Plaintiffs did not appeal of any of Commissioner Berger's decisions.

In February 2016, at the behest of Commissioner Berger, Blackstone engaged the services of Shepherd Electrical Engineers to address issues within Mass. Gen. L. ch. 112 § 81R. According to Plaintiffs, that section permits electricians to print their own plans rather than engage an electrical engineer to do so, and therefore, the services of Shepherd Electrical Engineers were not necessary. Commissioner Berger also required Blackstone to engage structural engineers regarding the integrity of 6 Depot St. and electrical engineers regarding low voltage wiring for emergency exit signs and lighting.

In early 2016, while the Code violations were still outstanding at 6 Depot St., Grafton initiated a Complaint for Injunctive Relief against the Plaintiffs in the Worcester Housing Court.

As part of the Housing Court action, the Chief Housing Specialist, Jeffrey Hernandez ("CHS Hernandez") appeared at 6 Depot St. for an inspection. CHS Hernandez affirmed the Code violations noted by Commissioner Berger and noted additional violations that he observed at the property at that time. The Worcester Housing Court granted Grafton's request for injunctive relief and thereafter, entered additional orders in favor of Grafton. All the required work was finally completed at 6 Depot Street in the fall of 2017.

According to Chief Charest, 99% of the failed inspections were corrected immediately by the owner or within a reasonable amount of time. Chief Charest cited another mill in Grafton located at 44 Brigham Hill Road ("44 Brigham Hill Rd.") for sprinkler system violations (the sprinkler system was shut off). 44 Brigham Hill Rd. is a commercial building over 35,000 cubic feet that failed inspection. Commissioner Berger also wrote orders to 44 Brigham Hill Rd. At the time of the noticed violations, the building was unoccupied. Nevertheless, Commissioner Berger "posted" the mill and ordered the property closed due to the Code violations. Chief Charest also consulted with the Fire Marshal's office about 44 Brigham Hill Rd. and filed an action against the owner in the Worcester Housing Court in order to have the sprinkler system turned back on. Grafton brought 44 Brigham Hill Rd. to Worcester Housing Court around the same time that Chief Charest was dealing with the subject violations at 6 Depot Street.

Another comparator property located at 244 Worcester Street in Grafton (Wyman-Gordon's) was required by Chief Charest to replace 1,827 sprinkler heads after a sprinkler head failed inspection. At the time of filing of the instant action and through December 2020, the Plaintiffs had no information on any commercial building over 35,000 cubic feet that was treated differently than the property at 6 Depot Street.

Heavey personally inspected many of the 68 buildings that were included in Grafton's response to a Freedom of Information request made by Blackstone. According to Heavey, conditions at these buildings, such as fire escapes, were in substantially poorer condition than those of 6 Depot St. On numerous occasions, Heavey inspected unspecified buildings in Grafton that had violations of the Code. After reviewing discovery in this case, Plaintiffs could not find any information which would indicate that owners of other unspecified properties within Grafton similar in size to 6 Depot St. were treated in the same manner regarding inspections, permit requirements, or the need to hire specific professional personnel about issues relating to what they deem ordinary repairs.

## **Discussion**[5]

The Plaintiffs have brought a claim under section 1983 for violation of their right to equal protection under the Fourteenth Amendment asserting that the Defendants intentionally singled out and discriminated against them by imposing unnecessary and inappropriate standards for repairs to 6 Depot St. which were not imposed on other similarly situated properties. The Plaintiffs further assert that Defendants' actions violated their substantive due process rights under the Fourteenth Amendment. In Count III, Plaintiffs assert a claim against Commissioner Berger and Chief Charest under section 1985 for conspiring to violate their civil rights.

---

[5] Plaintiffs have asserted claims against Grafton for violation of their constitutional rights, however, it is black letter law that a municipality cannot be liable on the basis of respondeat superior, rather liability must be predicated on a violation of a municipal custom or policy. *Monell v. Dep't of Soc. Serv. Of the City of N.Y.*, 436 U.S. 658, 691, 98 S.C.t 2018 (1978). Given that neither party has addressed the issue of municipal liability, the Court will presume that it is undisputed that the "final authority" theory applies, that is, that Commissioner Berger and Chief Charest were the final authorities on building code violations in Grafton during the relevant time and therefore, if their actions violated the Plaintiffs' rights under section 1983, Grafton is liable. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 C.t 1292 (1986)(single decision by municipal policy maker constitutes official policy where decision maker possesses final authority to establish municipal policy with respect to the action ordered). More problematic is that the parties' arguments regarding the section 1983 claims at times can be read to treat the individual Defendants as a unit, that is, they do not necessarily make an independent legal analysis as to the viability of each cause of action against each Defendant. Instead, the arguments seemingly analyze whether Plaintiffs claims are viable as to each individual Defendant based on the conduct of both, such that if one if found liable, they are both liable. Because it makes no difference in the outcome, the Court will do the same.

In support of their motion for summary judgment, Defendants argue first, that Plaintiffs' claims must be dismissed for failure to exhaust their administrative remedies as Blackstone never appealed any of orders and decisions imposed by the Defendants. In the alternative, Defendants argue that Plaintiffs' claims fail on their merits as they have failed to establish a claim for violation of their equal protection rights as they cannot show any malicious intent or bad faith by the individual Defendants, and they have failed to identify any relevant, similarly situated properties that were treated any differently under similar circumstances. As to Plaintiffs' substantive due process claim, Defendants argue that there is no evidence that any Defendants' actions or decisions shocked the conscience or were "truly horrendous" (the standard for establishing a substantive due process claim in a land use case). Defendants argue that Plaintiffs' section 1985 civil conspiracy claim fails because Plaintiffs have failed to establish that any actions by the Defendants were based on race or other class based discriminatory animus.[6] Initially, the Court will address whether Plaintiffs' section 1983 claims are barred for failure to exhaust administrative remedies.

<u>Whether Plaintiffs' Claims are Barred for Failure to Exhaust</u>

Plaintiffs have not disputed any of the factual allegations asserted by the Defendants in support of this argument, nor have the addressed the exhaustion argument in their opposition to

---

[6] The Plaintiffs have seemingly conceded that they have failed to plead a claim under section 1985 for conspiracy by Commissioner Berger and Chief Charest to violate their civil rights. In any event, since they did not provide any meaningful argument (either legal or factual) to support the claim, it is waived. Moreover, if I were to address the claim on its merits, I would find that on this record, Plaintiffs have failed to establish a claim for violation of section 1985 as there are no facts which would support a finding of raced based or other class based discriminatory animus, nor have they established that that the individual Defendants conspired to violate their rights (that they were both present in November 2015 for the initial walk through of 6 Depot St. without any additional factual allegations that would support a finding of an agreement between them is insufficient as a matter of law to establish the requisite conspiracy). Therefore, judgment shall enter for the Defendants on Count III. Plaintiffs suggest that if the Court determines that their section 1985 claim is legally deficient, they intend to further amend their complaint to assert a claim for civil conspiracy under Massachusetts law. Since the Court is granting summary judgment to the Defendants on all federal claims asserted in the complaint, any request to further amend their pleading to add a state law claim would be summarily denied.

the motion for summary judgment. Indeed, counsel for Plaintiffs acknowledged the exhaustion argument at the hearing, and summarily rejected it without making any legal argument other than to say that at the time, Plaintiffs had different counsel and Defendants did not file a motion to dismiss for failure to exhaust. First, while counsel for Plaintiffs is correct that Defendants did not file a motion to dismiss for failure to exhaust, they did assert failure to exhaust as an affirmative defense and therefore, they preserved the right to raise the defense at the summary judgment stage.[7]

Because failure to exhaust is an affirmative defense, the burden of showing non-exhaustion is on the defendant. *Russo v. Honen*, 755 F. Supp. 2d 313, 315 (D. Mass. 2010). When raised at summary judgment, the defendants bear the initial burden of showing that plaintiff has failed to exhaust generally available administrative remedies. S*ee Czekalski v. Hanks,* No. 18-cv-592, 2020 WL 7231358, at *12, 2020 U.S. Dist. LEXIS 231179, at *35 (D.N.H. Dec. 8, 2020),  The burden shifts to the plaintiff to come forward with evidence that usual administrative remedies were effectively unavailable *Id.*

Defendants notified the Plaintiffs of various Code violations which existed at 6 Depot St. and ordered the Defendants to rectify the same as the Code violations rendered the building unsafe. The Defendants also advised Plaintiffs of their right of appeal such orders and findings. Plaintiffs acknowledge that they did not appeal the Defendants' decisions and orders which form the basis of their claims, and do not allege that administrative remedies were effectively

---

[7] Plaintiffs have not cited any authority for the novel proposition that a defendant who has raised failure to exhaust as an affirmative defense waives that defense if it is not raised in a motion to dismiss the pleading. Pursuant to this Court's rules of procedure, there are seven defenses which must be raised by motion prior to filing a responsive pleading. *See* Fed.R.Civ.P 12(b)(6).  Failure to exhaust is not one of the enumerated defenses which must be raised in rule 12(b)6) motion. Accordingly, I find that the Defendants assertion of the defense as part of their summary judgment motion was both timely and proper. *Cf. Albino v. Baca,* 747 F.3d 1162, 1170 (9th Cir. 2014) (en banc) (summary judgment motion, not Rule 12(b) motion, is appropriate device for pretrial resolution of exhaustion issues if material facts are undisputed).

unavailable. Given Plaintiff's failure to establish either that they exhausted their administrative remedies, or were excused from doing so, Defendants argue that summary judgment in their favor is warranted. However, because the Defendants did not clearly delineate the remedies which were available to the Plaintiffs and it is not readily apparent to the Court what those remedies were, the Court has determined the more prudent course of action is to address Plaintiffs' section 1983 claims on their merits.

To establish a claim under section 1983, Plaintiffs must establish that a person acting under the color of law denied them of a right secured by the constitution or by federal law. The only question regarding Plaintiffs' claims is whether their constitutional rights were violated, that is, it is undisputed that the color of law element is meant. More specifically, the Plaintiffs assert that the Defendants violated their Fourteenth Amendment rights to equal protection under the law and their substantive due process rights. For the reasons set forth below, I find that Defendants' motion for summary judgment must be granted.

Whether Defendants are Entitled to Summary Judgment on Plaintiffs' Equal Protection Claim

To prevail on a claim for violation of their right to equal protection, Plaintiffs must establish: (1) [they], compared with others similarly situated, [were] selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Rubinovitz v. Rogato*, 60 F.3d 906, 909-10 (1st Cir. 1995). A plaintiff may satisfy the second prong by establishing that a defendant's actions or conduct involved "gross abuse of power, invidious discrimination or fundamentally unfair procedures." *PFZ Properties, Inc. v. Rodriguez*, 928 F.2d 28, 32 (1st Cir. 1991).

Plaintiffs take the position the violation of the right to equal protection was not based on any "invidious discrimination," but rather upon a gross abuse of power. According to them, Defendants, and in particular Commissioner Berger, engaged in a gross abuse of power by requesting, in contravention of Code requirements, that they hire experts and professionals to assist in completing the remediation of the building.[8] As to Chief Charest, Plaintiffs allege as an example of his abuse of power that he told Heavey he would not get any required permits until he paid his water bill. Heavey considered this a threat by Chief Charest, particularly since it was based on misinformation (Blackstone did not owe the Grafton water district any money).

Plaintiffs' allegations of abuse are based on their contention that Commissioner Berger and Chief Charest misinterpreted the building Code either themselves or by relying on persons to advise them who were not competent to interpret the Code, and Chief Charest "threatened" Heavey when he told him he would not get any permits to repair the building until Blackstone paid its water bill (a "threat" that Heavey knew as baseless). As a matter of law, these allegations are not invidious or egregious so as to constitute an abuse of power sufficient to establish a violation of the Plaintiffs' equal protection rights. Moreover, even if Plaintiffs could establish a genuine issue of material fact regarding the second prong of their equal protection claim, for the

---

[8] At the hearing, counsel for Plaintiffs, referencing an affidavit submitted by Heavey, asserted that at one meeting, Commissioner Berger arrived at 6 Depot St. armed with a gun on his person and, in an attempt to intimidate him, made sure that Heavey was aware that he was carrying a firearm. However, no such factual allegation was made in the Plaintiffs' Statement of Material Facts, or in the statement of facts contained in the Plaintiffs' opposition memorandum. Additionally, as will become relevant later in this discussion, at the hearing counsel referred generally to answers given at Heavey's deposition regarding specific other buildings which he felt were treated differently regarding alleged Code violations. Plaintiffs made no reference to these other specific buildings in their Statement of Material Facts. Plaintiffs did list multiple specific building/owners who they believe were treated differently by Defendants regarding Code violations in the statement of facts contained in their opposition memorandum, however, they did so *without citation to record support*. Simply put, factual allegations asserted for the first time at a summary judgment hearing are not properly before the Court. Moreover, when deciding a motion for summary judgment, it is not the Court's responsibility to peruse the parties' evidentiary submissions to determine whether they contain properly supported facts which dispute material facts alleged by the opposing party. Rather, the Court considers only those material facts included in the parties' respective statements of material facts *which are properly supported by citation to record evidence.*

reasons set forth below, I find that Defendants are entitled to summary judgment because they cannot satisfy the first prong, *i.e.*, that they were treated differently than similarly situated buildings/owners.

To satisfy the first prong of their equal protection claim, Plaintiffs must show that they "'[have] been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.' " *Snyder v. Gaudet*, 756 F.3d 30, 34 (1st Cir. 2014)(citation to quoted case omitted). Since Plaintiffs have not alleged membership in any particular class, the Defendants have assumed that that they are alleging they were singled out as a "class of one." After reviewing Plaintiffs' submissions, which make no attempt to contradict the Defendants' assumption, the Court agrees that Plaintiffs have proceeded under a class of one theory.

> In a class of one equal protection claim, proof of a similarly situated, but differently treated, comparator is essential. In particular, plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves. They must show that they 'engaged in the same activity ... without such distinguishing or mitigating circumstances as would render the comparison inutile. Moreover, this requirement must be enforced with particular rigor in the land-use context because … decisions [relating to the use or property] will often, perhaps almost always, treat one landowner differently from another.

*Snyder,* 756 F,3d at 34-35 (internal quotation marks, internal citations and citations to quoted cases omitted).

Like the plaintiff in *Snyder*, Plaintiffs have not argued "that the rigorous similarity requirement should be relaxed due to any special circumstance of [their] case. More to the point, [they do] not point to any owner of another building, operating under a similar [alleged Code violations]," who was not cited for and required to remedy similar Code violations in their building. *Cf. Id.* I so find becasue the only factual allegations properly before the Court regarding similarly situated buildings is the following:

Heavey personally inspected many of the 68 buildings that were included in Grafton's response to a Freedom of Information request made by Blackstone. According to Heavey, conditions at these buildings, such as fire escapes, were in substantially poorer condition than those of 6 Depot St. On numerous occasions, Heavey inspected unspecified buildings in Grafton that had violations of the Code. After reviewing discovery in this case, Plaintiffs could not find any information which would indicate that owners of other unspecified properties within Grafton similar in size to 6 Depot St. were treated in the same manner regarding inspections, permit requirements, or the need to have specific professional personnel about issues relating to what they deem ordinary repairs.

First even assuming that Heavey, who is a licensed construction supervisor, has the requisite background to opine on matters relating to Code violations, Plaintiffs have not *identified* a single building that was treated differently regarding Code violations than the Defendants treated 6 Depot St. Instead, to establish their claim Plaintiffs rely on general conclusions reached by Heavey that the fire escapes at unidentified buildings he inspected were in substantially poorer condition than those of 6 Depot St., and that he could not find any information that such buildings were treated in the same manner as 6 Depot St. with respect to Code violations[9]. Such allegations are woefully insufficient to establish that Plaintiffs were treated differently than other similarly situated properties/owners. Indeed, even if the Court were to consider the properties listed by Plaintiffs in the opposition memorandum or by their counsel at the hearing, their claim would fail as the Plaintiffs did not provide any information which would establish that the properties/owners were similarly situated, that is, there is no information as to the size of the buildings, whether they were open to the public, whether the were cited for Code violations and if so, what violations, and/or what orders, notices and remedies that the

---

[9] The only specific potential similarly situated property, 44 Brigham Hill Rd., was identified by the Defendants. First,44 Brigham Hill Rd. was cited for a non-working sprinkler system (it was shut off) and other unspecified Code violations. Whether the violations with which 44 Brigham Hill Rd. was cited created similar safety issues as presented by the numerous Code violations found at 6 Depot St. is an open question. Assuming that property can be deemed similarly situated, Chief Charest and Commissioner Berger issued various orders and notices to the owners regarding the violations. The building was ordered closed to the public and the owners were ultimately taken to court for failure to remedy the violations. Accordingly, Plaintiffs have not adduced any evidence that 44 Brigham Hill Rd. was treated any differently than them.

Defendants imposed on such properties/owners in regards to such violations. Accordingly, I find that Defendants are entitled to summary judgment on Plaintiffs' equal protection claim.

<u>Whether Defendants are Entitled to Summary Judgment on Plaintiffs' Substantive Due Process Claim</u>

In their substantive due process claim, Plaintiffs argue that the actions of Commissioner Berger and Chief Charest regarding 6 Depot St., *i.e.,* denying permits, closing the building, "coercing" Blackstone into hiring unnecessary contractor and professionals and essentially, requiring Blackstone to obtain permits and perform work that was not required under state or local law violated their substantive due process rights. Defendants argue that none of the alleged actions by the individual Defendants, even if true, rise to the level of conduct violative of the substantive due process clause.

"[T]o be liable for a violation of substantive due process rights, a defendant must have engaged in behavior that is 'conscience-shocking': 'the substantive due process doctrine may not, in the ordinary course, be invoked to challenge discretionary permitting or licensing determinations of state or local decisionmakers, whether those decisions are right or wrong.' [The First Circuit has] repeatedly affirmed the use of this standard in the context of challenges to land use decisions. *Mongeau v. City of Marlborough*, 492 F.3d 14, 17 (1st Cir. 2007). For example, "rejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process. Even where state officials have allegedly violated state law or administrative procedures, such violations do not ordinarily rise to the level of a constitutional deprivation." *PFZ Properties, Inc. v. Rodríguez*, 928 F.2d 28, 31 (1st Cir.1991)(internal citations omitted).

> 'There is no scientifically precise formula for determining whether executive action is—or is not—sufficiently shocking to trigger the protections of the substantive due process branch of the Fourteenth Amendment.' However, certain principles have emerged from the case law. Executive acts that shock the

conscience must be 'truly outrageous, uncivilized, and intolerable,' and "the requisite arbitrariness and caprice must be stunning, evidencing more than humdrum legal error'. Indeed, '[a] hallmark of successful challenges is an extreme lack of proportionality, as the test is primarily concerned with violations of personal rights so severe[,] so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.' … [Moreover, the First Circuit has] said that 'any permit or license denial, no matter how unattractive, that falls short of being 'truly horrendous' is unlikely to qualify as conscience-shocking.'

*Harron v. Town of Franklin*, 660 F.3d 531, 536 (1st Cir. 2011)(internal citations and citations to quoted cases omitted).

Little discussion of Plaintiffs' substantive due process claim is warranted. Commissioner Berger and Chief Charest were faced with a building open to the public that had suffered a partial roof collapse in an attached structure; the main building was thereafter found to have several safety issues in violation of the Code, including lack of emergency lights and exit signs, emergency exit doors which were bolted shut and deficient fire escapes. Additionally, the fire extinguishers were out of date, there were walls and fixtures constructed in such a way as to impair the working of sprinklers, bricks were falling form the chimney, and the presence of asbestos was detected. These violations were discovered when Commissioner Berger and Chief Charest were conducting an investigation of the roof collapse. Additionally, in a subsequent walkthrough, it was determined that the sprinkler in an adjoining small building had been turned off. Both Commissioner Berger and Chief Charest consulted with others whom they considered to have greater knowledge concerning how such Code violations should be addressed— Commissioner Berger with two State Building Inspectors and a hired consultant, and Chief Charest with the Fire Marshal's Office. Based on the information they received from these third parties, Commissioner Berger and Chief Charest determined that under the Code, remediation of

the violations fell under "construction control" and not "ordinary repairs." They then issued

remediation notices and orders to Plaintiffs in accordance with that understanding.

The Court will assume that Commissioner Berger and Chief Charest were wrong, that is,

the Code violations should have been deemed to fall under "ordinary repairs" and therefore,

Commissioner Berger and Chief Charest should not have required the Plaintiffs to hire certain

professionals or undertake other steps that were not mandated by state or local law (at great

expense to the Plaintiffs). Nonetheless, even assuming Plaintiffs' allegations to be true, I find

that, as a matter of law, Commissioner Berger's and Chief Charest's actions cannot be said to be

"truly horrific" or to otherwise shock the conscience. Accordingly, Defendants are entitled to

summary judgment on Plaintiffs' substantive due process claim.

## <u>Conclusion</u>

It is hereby Ordered that:

I. Defendants Town of Grafton by and through its Inspector of Buildings Robert S.
Berger's and its Assistant Fire Chief Stephen L. Charest's Motion for Summary Judgment
(Docket No. 58), is ***granted***;

2. Defendant Commissioner Robert S. Berger's and (Ret.) Assistant Fire Chief Stephen
L. Charest's Motion to Strike The Affidavit of James Shuris, P.E. (Docket No. 63), is ***granted***;
and

3. Plaintiffs' Motion to Amend Affidavit of Their Expert Witness James Shuris (Docket
No. 64) is ***denied as moot***.


                                        **/s/ *Timothy S. Hillman***_____
                                        TIMOTHY S. HILLMAN
                                        DISTRICT JUDGE